UNITED STATES, Appellee,

v.

Captain Cecil A. SEIVERS, SSN 407–48–7664, United States Army, Appellant.

CM 435254.

U. S. Army Court of Military Review.

19 April 1978.

Captain John E. Caulking, JAGC, argued the cause for appellant. With him on the brief were Colonel Robert B. Clarke, JAGC, and Major Benjamin A. Sims, JAGC.

Captain Stephen P. Henderson, JAGC, argued the cause for appellee. With him on the brief were Colonial Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Captain Richard A. Kirby, JAGC.

Before JONES, MITCHELL and De-FORD, Appellate Military Judges.

## OPINION OF THE COURT

MITCHELL, Judge:

Contrary to his plea, the appellant was convicted by a general court-martial of the following charged offense:

"In that Captain Cecil A. Seivers, U. S. Army, Company A, 1st Battalion, School Brigade, Fort Knox, Kentucky, did from about 26 June 1975 to about 14 July 1975, at Fort Knox, Kentucky, steal money of a value of about $7,762.72, the property of the United Services Automobile Association, San Antonio, Texas."

This was in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921.

The military jury sentenced the appellant to be dismissed from the service and the convening authority approved. However, we agree with the appellant that the charge must be dismissed because the court-martial lacked jurisdiction over the offense. *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

At trial the appellant moved to dismiss the charge and specification due to lack of jurisdiction. The judge, at a 39(a) session, conducted a jurisdictional hearing. Private Rose, the key government witness, testified that on the morning of 25 June 1975, he met the appellant in the latter's on-post office and reached an agreement to destroy the appellant's new Ford Thunderbird automobile. The vehicle was insured against theft and physical damage by the United Services Automobile Association (USAA). The Ford Motor Credit Corporation was the lien holder with an insured balance of $5,917.16. The appellant told Private Rose that he would pay him for his services and authorized him to employ someone to help in the venture. The officer promised to have a duplicate ignition key made which would be delivered to Private Rose at Godman Army Airfield, Fort Knox, the next morning.

As planned, Private Rose and a Sergeant Redman, his selected accomplice, on the morning of 26 June 1975, drove to the Godman Army Airfield Dispensary where the appellant was undergoing a flight physical examination. The three met near the appellant's parked Thunderbird and the key, wrapped in a handkerchief, was passed to Private Rose. The appellant promised Sergeant Redman that he would receive $120.00 for his assistance in the destruction of the car. During the discussion there was never any mention by the appellant to his co-conspirators of any reason or motive for having his automobile destroyed. He simply told them to take it "somewhere off Fort Knox near Elizabethtown" and to "meet him back at the company after [they] had demolished the car—disposed of it." After the appellant returned to the dispensary, Private Rose, using the key given to him by the appellant, drove the Thunderbird to an Elizabethtown (Ky.) rock quarry and maneuvered it over the edge of a 100 foot cliff. Sergeant Redman, who had followed in his own automobile, picked up Private Rose. They returned to Fort Knox and advised the appellant that the assigned task had been accomplished. The appellant gave Sergeant Redman $50.00 and promised the two enlisted men that he would "cover them" for the period of time they had been gone by telling the people at their company that they were "on detail." He then reported to the military police that his car had been stolen.

Mr. Douglas Middleton, District Manager, Claims Department, USAA, testified for the Government on the motion. He stated that officers in the military, certain foreign service and public health service officers, and certain individuals designated as assigned risks were eligible for membership in USAA. The appellant qualified for membership due to his military status and grade. It was irrelevant whether he was in the military at the time he made the claim, however, since he had already been awarded a valid membership in the association.

In support of the motion the appellant testified that he had been a member of USAA since 1968. He mailed the "total theft" claim (sworn proof of loss), from his off-post residence in Louisville, Ky. on 15 July 1975. He received the two insurance checks at his duty address at Fort Knox. One check, dated 10 July 1975, in the amount of $5,917.68 was endorsed over to the Ford Motor Credit Corporation on 15 July 1975 and the second check dated 18 August 1975 in the amount of $1858.00 was, on 21 August 1975, deposited by him in his account with the Fort Knox National Bank located on the installation. The trial judge determined that the court-martial had jurisdiction over the offense and consequently denied the appellant's motion.

■ Before us, government appellate counsel argue that the recited facts prove that the appellant's criminal intent and his on-post enlistment of the subordinate soldier-confederates to assist in the larceny venture was an integral part of his scheme to obtain money from USAA under false pretenses. However true that statement may be, it is not determinative of the issue before us. It must be remembered that the appellant was charged and convicted of the offense of larceny, not *conspiracy* to commit larceny or some other offense such as

solicitation. *See United States v. Williams,* 4 M.J. 336 (C.M.A.1978); *United States v. Sims,* 2 M.J. 109 (C.M.A.1977). In *United States v. Hedlund,* 2 M.J. 11 (C.M.A.1976), the Court of Military Appeals found court-martial jurisdiction over a charged conspiracy completed on post (that is, both the agreement and an act in furtherance thereof occurred on the military installation), but ruled that the court-martial lacked subject-matter jurisdiction over the substantive offense which was the object of that conspiracy, which occurred off-post.

■ After considering the 12 criteria and the 9 affirmative considerations discussed in *Relford v. Commandant, supra,* we conclude that the court-martial lacked jurisdiction to try the appellant for larceny from the insurance company by false pretense. We reach this conclusion fully realizing that the facts of record strongly support the argument that the appellant did in fact conspire with the two soldiers to destroy his automobile and subsequently filed a fraudulent claim with the insurance company.*

The finding of guilty and the sentence are set aside and the charge is dismissed.

Senior Judge JONES and Judge De-FORD concur.

## CERTIFICATE FOR REVIEW

TO THE HONORABLE, THE JUDGES OF THE UNITED STATES COURT OF MILITARY APPEALS:

1. Pursuant to the Uniform Code of Military Justice, Article 67(b)(2), the record of trial, and decision of the Court of Military Review, United States Army, in the above-entitled case, are forwarded for review.

2. Captain Seivers was convicted of larceny of $7,762.72 from the United Services Automobile Association, San Antonio, Texas, in violation of Article 121, Uniform Code of Military Justice. He was sentenced to be dismissed from the service. On 28 September 1976 the convening authority approved the sentence. On 19 April 1978, in its Opinion of the Court, the United States Army Court of Review set aside the finding and sentence and dismissed the charge. *United States v. Seivers,* CM 435254 (A.C.M.R. 19 April 1978). On 10 May 1978 the Army Court of Military Review denied the Government's Motion for Reconsideration of that Opinion.

3. It is requested that action be taken with respect to the following issues:

I

DID THE ARMY COURT OF MILITARY REVIEW ERR IN NOT VIEWING THE LARCENY BY FALSE PRETENSE AS COMPLETE ONLY WHEN CAPTAIN SEIVERS RECEIVED THE CHECKS AT HIS ON–POST ADDRESS WITH THE REQUISITE INTENT TO STEAL, THEREBY RENDERING THE OFFENSE SERVICE CONNECTED FOR THE PURPOSE OF EXERCISING COURT–MARTIAL JURISDICTION BECAUSE IT WAS COMMITTED ON POST?

II

ASSUMING THE ARMY COURT OF MILITARY REVIEW WAS CORRECT IN PERCEIVING THE LARCENY AS BEING COMPLETED OFF–POST, DO THE SUBSTANTIAL SERVICE–CONNECTING FACTORS SURROUNDING THE OFFENSES NONETHELESS RENDER THAT OFFENSE SERVICE–CONNECTED FOR THE PURPOSE OF EXERCISING COURT–MARTIAL JURISDICTION?

Received a copy of the foregoing Certificate of Review this 24th day of May, 1978.

---

* Our disposition of this case, however, makes it unnecessary to discuss the other assignments of error.