UNITED STATES, Appellee

v.

Calvin J. DAVENPORT, Sergeant First Class
U.S. Army, Appellant

No. 13-0573

Crim. App. No. 20081102

United States Court of Appeals for the Armed Forces

Argued April 28, 2014

Decided August 11, 2014

RYAN, J., delivered the opinion of the Court, in which ERDMANN, STUCKY, and OHLSON, JJ., joined. BAKER, C.J., filed a separate dissenting opinion.


Counsel

For Appellant: Captain Brian D. Andes (argued); Colonel Kevin Boyle, Lieutenant Colonel Peter Kageleiry Jr., and Major Vincent T. Shuler (on brief); Major Jacob D. Bashore, Captain Jack D. Einhorn, and Captain A. Jason Nef.

For Appellee: Captain Carrie L. Ward (argued); Colonel John P. Carrell, Lieutenant Colonel James L. Varley, and Major Kenneth W. Borgnino (on brief).

Military Judges: Jeffery R. Nance, Edward J. O'Brien, and Mark A. Bridges


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Davenport, 13-0573/AR

Judge RYAN delivered the opinion of the Court.

Contrary to his pleas, a military judge sitting as a general court-martial convicted Appellant of four specifications of conspiracy, in violation of Article 81, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 881 (2012), seven specifications of extortion, in violation of Article 127, UCMJ, 10 U.S.C. § 927 (2012), and two specifications of bribery, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2012).  The adjudged sentence provided for two years of confinement, reduction to E-1, and a bad-conduct discharge.  The convening authority approved only one year of confinement, but otherwise approved the adjudged sentence.

Before the United States Army Court of Criminal Appeals (ACCA), Appellant argued that the omission of the testimony of a Government merits witness -- Sergeant (SGT) MS -- rendered the transcript nonverbatim and incomplete, preventing approval of any sentence that included either confinement greater than six months or a punitive discharge.  United States v. Davenport, No. ARMY 20081102, 2013 CCA LEXIS 361, at *9-*10, 2013 WL 1896277, at *3 (Apr. 18, 2013).  On October 31, 2011, the ACCA ordered a post-trial hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967), to provide an opportunity to reconstruct the testimony of SGT MS.  Id. at *10-*11, 2013 WL 1896277, at *3.  On April 2, 2012, the DuBay hearing was

2

conducted and the military judge made findings of fact concerning SGT MS's testimony.  Id. at *11, 2013 WL 1896277, at *3.  Based on these findings, on April 18, 2013, the ACCA found that the record in this case was "both substantially verbatim and complete for appellate review purposes."  Id. at *15, 2013 WL 1896277, at *4.

We granted review of the following issue:

WHETHER THE OMISSION OF TESTIMONY FROM A TRIAL TRANSCRIPT RENDERS THE TRANSCRIPT NON-VERBATIM AND THEREFORE SUBJECT TO THE REMEDY IN [RULE FOR COURTS-MARTIAL (R.C.M.)] 1103(f)(1) WHERE THE WITNESS'S TESTIMONY IS ONLY RELEVANT TO AN OFFENSE OF WHICH APPELLANT HAS BEEN ACQUITTED; OR, WHETHER SUCH OMISSION SHOULD BE ADDRESSED UNDER R.C.M. 1103(b)(2)(A) (REQUIREMENT FOR A COMPLETE RECORD) AND THUS TESTED FOR WHETHER THE PRESUMPTION OF PREJUDICE HAS BEEN REBUTTED.  SEE UNITED STATES v. GASKINS, 72 M.J. 225 (C.A.A.F. 2013); UNITED STATES v. HENRY, 53 M.J. 108 (C.A.A.F. 2000).

United States v. Davenport, 73 M.J. 200 (C.A.A.F. 2014) (order granting review).

We hold that, under the facts of this case, the complete omission of SGT MS's testimony on the merits from the trial transcript was a substantial omission that rendered the transcript nonverbatim.  Consequently, the convening authority was limited to the remedies listed in R.C.M. 1103(f).  The decision of the ACCA is reversed.

3

I.   FACTS

On December 1, 2007, Appellant was assigned to a unit headquartered on Forward Operating Base (FOB) Rustamiyah, Iraq. During the latter part of December 2007 and the early part of January 2008, Appellant, Command Sergeant Major (CSM) Ofelia Webb, and First Sergeant (1SG) Patrick A. Faust, decided to open and operate a hair salon, "Hair Zone," and barbershop, "Razor Edge," on the FOB.  The plan involved using locally acquired property to furnish both the salon and barbershop and employing Iraqi and third-country nationals to provide the hair care services.  Consistent with the plan, Mr. Hasseeb Muhammadatta Khalil Al-Sawad, a local vendor, delivered an estimated $4,680.00 of property to the businesses.  Al-Sawad believed he was providing the property on credit with the expectation that Appellant would pay him at a later date.  After delivery, Appellant, commenting on an unrelated contract that Al-Sawad obtained, in part, through Appellant's efforts, confronted Al-Sawad, along with 1SG Faust, and told him that because of Appellant's efforts, he would not pay Al-Sawad for the property. Appellant then directed Al-Sawad to alter a receipt for the property and note that the payment was made in full.  Al-Sawad did so because he believed both that Appellant and 1SG Faust were "big people" of "high rank" and, based on statements from

4

Appellant, that he would be permanently removed from FOB Rustamiyah if he did not comply.

Appellant and his partners also required each employee at the barbershop and hair salon to pay them $300.00 a month, as a condition of employment, and threatened loss of employment and removal from the FOB if the employee refused. Additionally, Appellant and 1SG Faust also used their position of power to affect cable and Internet services on the FOB by negotiating with Netgate, a cable and Internet provider, for the company to pay them $30,000.00 in exchange for operating on the FOB.

Appellant's trial ended on December 11, 2008. The trial counsel had a duty to review the record for errors before authentication. See R.C.M. 1103(i)(1)(A). Notwithstanding the military judge's and trial counsel's review, the record was authenticated on June 2, 2009; missing from the record was the entire testimony on the merits of SGT MS, a Government witness. The record indicates only that the Government called SGT MS as a witness. Although the court reporter recorded the testimony, at some point after the case concluded the computer on which the court reporter recorded the testimony was reimaged, preventing recovery of the original recorded data. The testimony's omission from the record was first discovered by appellate defense counsel on appeal to the ACCA. On July 30, 2010, Appellant asserted, inter alia, that the omission of SGT MS's

5

testimony from the record rendered the transcript incomplete under Article 54(c)(1)(A), UCMJ, 10 U.S.C. § 854(c)(1)(A) (2012), and nonverbatim under R.C.M. 1103(b)(2)(B).

On October 31, 2011, the ACCA ordered a post-trial DuBay hearing to provide the Government an opportunity to reconstruct SGT MS's testimony. The DuBay hearing occurred on April 2, 2012. While SGT MS testified at the DuBay hearing, he could not recall certain details of his testimony, and acknowledged only that he might recall the information if he reheard the specific questions asked at the court-martial again at the DuBay hearing. Even then his memory was imperfect, as he could not recall if had been asked about testifying under a grant of immunity at trial.[1] After the DuBay hearing, the military judge made several findings of fact, including:

> The full substance and extent of [SGT MS's] testimony is not altogether clear. With the exception of the military judge, no witnesses testifying during this hearing maintained any notes related to this trial. . . .
>
> . . . [SGT MS]'s testimony consisted of a direct examination[,] . . . a cross-examination by one of the appellant's defense counsel, and a re-direct examination. . . .
>
> [SGT MS]'s testimony mostly related to the "money laundering" charges contained in Additional Charge IV, of which the appellant was found not guilty. . . .

---

[1] The trial military judge, however, testified that his trial notes indicated that when the Government asked, SGT MS admitted he had been granted immunity.

        [SGT MS] was also asked whether he was aware of
    any threats made by the appellant and whether the
    appellant had ever taken money or property from "local
    nationals."  [SGT MS] testified that he was not aware
    of any such threats made by appellant or of any
    property or money taken by the appellant from "local
    nationals."

    . . . .

        There is some evidence that objections were made
    by the defense counsel during the testimony of [SGT
    MS], but there is no evidence to establish what those
    objections were.

## II.  ACCA DECISION

After considering the findings from Appellant's DuBay hearing, the ACCA found that "the government was unable to obtain or adequately reconstruct the exact testimony of SGT MS." Davenport, 2013 CCA LEXIS 361, at *14, 2013 WL 1896277, at *4. Despite this fact, and in tension with the DuBay military judge's conclusion that the substance and extent of SGT MS's testimony was "not altogether clear" and that the testimony only "mostly" related to two money laundering charges of which Appellant was acquitted, the ACCA found that SGT MS "had no information relevant to any offense of which Appellant was convicted" and that his testimony "only related to the two money laundering specifications of which appellant was acquitted." Id. at *11-*14, 2013 WL 1896277, at *3-*4 (emphasis added) (footnote omitted).  It reasoned from this that "'not one fact of substance or materiality to a legal or factual issue is

7

missing from [appellant's] transcript,'" id. at *14, 2013 WL 1896277, at *4 (alteration in original), and concluded that "the record in appellant's case [was] both substantially verbatim and complete for appellate review purposes." Id. at *15, 2013 WL 1896277, at *4.

### III.  DISCUSSION

#### A.

Whether a record is complete and a transcript is verbatim are questions of law that this Court reviews de novo. Cf. United States v. Henry, 53 M.J. 108, 110 (C.A.A.F. 2000). "The requirement that a record of trial be complete and substantially verbatim in order to uphold the validity of a verbatim record sentence is one of jurisdictional proportion that cannot be waived." Id. Although "[a nonverbatim] transcript and an incomplete record are separate and distinct errors under the R.C.M., we think that distinction has been blurred based on dicta" in various cases before this Court. United States v. Gaskins, 72 M.J. 225, 230 (C.A.A.F. 2013).

"A verbatim transcript includes:  all proceedings including sidebar conferences, arguments of counsel, and rulings and instructions by the military judge . . . ." R.C.M. 1103(b)(2)(B) Discussion.  A verbatim transcript of all sessions is required when:

8

> (i) Any part of the sentence adjudged exceeds six
> months confinement, forfeiture of pay greater than
> two-thirds pay per month, or any forfeiture of pay for
> more than six months or other punishments that may be
> adjudged by a special court-martial; or
> (ii) A bad-conduct discharge has been adjudged.

R.C.M. 1103(b)(2)(B). Here, a verbatim transcript is required because the military judge sentenced Appellant to two years of confinement and a bad-conduct discharge. See R.C.M. 1103(b)(2)(B). By definition, if there is not a verbatim transcript, there is also no "complete record." R.C.M. 1103(b)(2)(D). However, while in the case of most incomplete records prophylactic measures are not prescribed, and the missing material or remedy for same are tested for prejudice, where the record is incomplete because the transcript is not verbatim, the procedures set forth in R.C.M. 1103(f) control. Gaskins, 72 M.J. at 230-31; see also infra pp. 13-15.

In assessing either whether a record is complete or whether a transcript is verbatim, the threshold question is "whether the omitted material was 'substantial,' either qualitatively or quantitatively." United States v. Lashley, 14 M.J. 7, 9 (C.M.A. 1982). Cf. Gaskins, 72 M.J. at 229 (stating that a "substantial" omission makes a record incomplete). The transcript in this case omitted SGT MS's entire testimony. Thus, our focus is on the narrow threshold question whether the

omission in the transcript was qualitatively or quantitatively substantial, which would render it nonverbatim.

Despite the dictionary definition of the term "verbatim," transcripts need not be "[w]ord for word," but must be "'substantially verbatim.'" Lashley, 14 M.J. at 8 (noting that "literal compliance with this [verbatim] requirement is impossible"). Logically, if R.C.M. 1103(b)(2)(B) required every transcript to be word for word, "every record could be assailed as deficient" because "[m]any, if not all, records fail to record every word spoken at a hearing." United States v. Nelson, 3 C.M.A. 482, 486, 13 C.M.R. 38, 42 (1953). As such, a transcript may be deemed "substantially verbatim" though it has certain omissions. In contrast, omissions are qualitatively substantial if the substance of the omitted material "related directly to the sufficiency of the Government's evidence on the merits," and "the testimony could not ordinarily have been recalled with any degree of fidelity." Lashley, 14 M.J. at 9. Omissions are quantitatively substantial unless "the totality of omissions . . . becomes so unimportant and so uninfluential when viewed in the light of the whole record, that it approaches nothingness." Nelson, 3 C.M.A. at 487, 13 C.M.R. at 43.

The trial transcript from Appellant's original court-martial recites:

[Military Judge]: [Trial Counsel], what's next?

10

[Trial Counsel]:  [SGT MS], sir.

[SGT MS], U.S. Army, was called as a witness for the prosecution, was sworn and testified as follows:

DIRECT EXAMINATION

Questions by the trial counsel:

[The court-martial was called to order at 1717, 9 December 2008.} [sic]

[Military Judge]:  The court is again called to order. All parties present when the court recessed are again present.

As evidenced here, the transcript entirely omitted the testimony of SGT MS, a Government merits witness.  The omission of the testimony of an entire merits witness is almost necessarily substantial where, as here, the content of the testimony is equivocal even after attempts to reconstruct it at a DuBay hearing.  In this case the omission was substantial both quantitatively, because the entire testimony was omitted, and qualitatively, because the substance of the omitted testimony presumably relates directly to the Government's evidence on the merits and could not be recalled with fidelity.  See Lashley, 14 M.J. at 9.  Cf. United States v. Stoffer, 53 M.J. 26, 27 (C.A.A.F. 2000) (omission of three exhibits presented during sentencing was substantial because the exhibits presumably related to the sentencing decision and the contents were not identified in the record of trial).

While the DuBay military judge's findings stated that "[SGT MS]'s testimony mostly related to the 'money laundering' charges . . . of which the appellant was found not guilty," the findings also acknowledged that "[t]he full substance and extent of [SGT MS's] testimony is not altogether clear." Where, as here, the Government was unable to obtain or adequately reconstruct the testimony of SGT MS, we are hard pressed to agree with the ACCA that we can be certain of what SGT MS testified about. Moreover, we cannot accept that the testimony only related to the money laundering charges of which Appellant was acquitted, given that the DuBay military judge also found that SGT MS "was also asked whether he was aware of any threats made by the appellant and whether the appellant had ever taken money or property from 'local nationals,'"[2] -- information which relates directly to the seven extortion specifications. On the whole, the ACCA's characterization of the DuBay military judge's equivocal findings is more definitive than the record warrants. Deference is due to the DuBay military judge's findings, but not to the ACCA's recharacterization of those findings.

The uncertain content of SGT MS's testimony, including several admissions that he could not remember his testimony at

---

[2] When the DuBay military judge asked this question, SGT MS responded, "'To my recollection, I never saw him make threats or anything. I never even heard anything about him making threats.'"

12

trial; his testimony that, in essence, he had to be asked the right questions in order to jog his memory as to what he had been asked about at trial; and his lack of memory with respect to whether he had been asked about testifying under a grant of immunity, is compounded by the DuBay military judge's finding that "[w]ith the exception of the military judge, no witnesses testifying during this hearing maintained any notes related to this trial."

Furthermore, the findings merely offered a summary of the substance of the testimony and the "[i]nclusion of the substance of a portion of the record of proceedings dealing with material matter is not a verbatim transcript of the record." United States v. Gray, 7 M.J. 296, 298 (C.M.A. 1979) (quoting United States v. Sturdivant, 1 M.J. 256, 257 (C.M.A. 1976)). On balance, the omission of SGT MS's testimony was substantial and, therefore, the transcript here was nonverbatim.

B.

Having concluded that the record is nonverbatim, it is necessary to determine the appropriate remedy for the error. Although it is true that the Manual for Courts-Martial, United States (MCM), "does not limit the [ACCA's] discretion to remedy an error in compiling a complete record," Gaskins, 72 M.J. at 230, when "a verbatim transcript cannot be prepared," the remedial options are limited and definitively circumscribed.

13

See id. at 230–31; see also Edmond v. United States, 520 U.S. 651, 657 (1997) ("Ordinarily, where a specific provision conflicts with a general one, the specific governs.").

The MCM provides that, in the case of a nonverbatim transcript:

> [T]he convening authority may:  (1) Approve only so much of the sentence that could be adjudged by a special court-martial, except that a bad-conduct discharge, confinement for more than six months, or forfeiture of two-thirds pay per month for more than six months, may not be approved; or (2) Direct a rehearing as to any offense of which the accused was found guilty if the finding is supported by the summary of the evidence contained in the record, provided that the convening authority may not approve any sentence imposed at such a rehearing more severe than or in excess of that adjudged by the earlier court-martial.

R.C.M. 1103(f).  The plain language of R.C.M. 1103(f) indicates there are only two options available to the convening authority when a verbatim transcript cannot be prepared.

Because the DuBay hearing failed to reconstruct the testimony of SGT MS, as the ACCA acknowledged, the ACCA erred in holding that the transcript was nonetheless verbatim, and there is no authority for us to apply the remedy for an incomplete record to a nonverbatim transcript, as the Government urges. Accordingly, given our conclusion that the transcript remained nonverbatim after the DuBay hearing and that, in this context, R.C.M. 1103(f) limits the remedies available to a rehearing or a

14

modified sentence, we hold that it was error for the ACCA to affirm Appellant's sentence.

## IV. DECISION

The decision of the United States Army Court of Criminal Appeals is reversed and the case is remanded to the Judge Advocate General for return to the Convening Authority for action consistent with R.C.M. 1103(f).

United States v. Davenport, No. 13-0573/AR

BAKER, Chief Judge (dissenting):

The facts in this case are novel and hopefully will not be repeated. There is no doubt that the trial transcript failed to include the entirety of Sergeant (SGT) MS's testimony. The question presented is whether this omission was so substantial as to render the transcript nonverbatim and, if so, whether it was subject to the sentencing limitations of Rule for Courts-Martial (R.C.M.) 1103(f).

The majority concludes the "omission of the testimony of an entire merits witness is almost necessarily substantial . . . because the substance of the omitted testimony presumably relates directly to the Government's evidence on the merits" and, on this basis, it concludes Appellant's sentence must be returned for action by the convening authority in accordance with R.C.M. 1103(f)(1), thus reversing the decision of the CCA. United States v. Davenport, __ M.J. __, __ (11-12, 15) (C.A.A.F. 2014). I disagree and therefore respectfully dissent.

A. R.C.M. 1103(b)(2)(B)

In determining whether a transcript is verbatim, the threshold question is "whether the omitted material was 'substantial,' either qualitatively or quantitatively." United States v. Lashley, 14 M.J. 7, 9 (C.M.A. 1982). "Sometimes the omissions are so substantial that the only remedy is a new trial," but at other times, "the omitted material is

sufficiently retrievable that a record can be salvaged and pronounced 'substantially verbatim'" as governed by "individual factors."  Id. at 8-9 (citations omitted).

In the present case, the CCA ordered a DuBay hearing in order to determine if the omitted testimony was sufficiently retrievable such that the trial record could be salvaged and the transcript deemed substantially verbatim.  Findings of fact at a DuBay hearing "will not be overturned unless they are clearly erroneous or unsupported by the record."  United States v. Leedy, 65 M.J. 208, 213 (C.A.A.F. 2007).  Based on testimony from witnesses including the military judge, the DuBay military judge determined that SGT MS's testimony related primarily to the money laundering charges of which Appellant was acquitted. The CCA subsequently found the record in Appellant's case to be "substantially verbatim and complete for appellate review purposes."  United States v. Davenport, No 20081102, 2013 CCA LEXIS 361, at *15, 2013 WL 1896277, at *4 (Army Ct. Crim. App. April 18, 2013)  It further found that SGT MS "had no information relevant to any offense of which [A]ppellant was convicted."  2013 CCA LEXIS 361, at *14, 2013 WL 1896277, at *4. Thus, the CCA not only affirmed the DuBay hearing findings of fact, but went beyond, and concluded that SGT MS's testimony related to money laundering charges of which Appellant was ultimately acquitted.

I agree with the CCA.  First, R.C.M. 1103(b)(2)(B) states that a verbatim transcript is required for "all sessions except sessions closed for deliberations and voting."  R.C.M. 1103(b)(2)(B) (emphasis added).  Of note, it does not say that a verbatim transcript is required for all witnesses.  In theory, it is possible that a witness's testimony could be qualitatively or quantitatively unimportant, even if omitted in its entirety.  Here, the DuBay hearing determined that SGT MS's testimony was primarily directed at the money laundering charges of which Appellant was ultimately acquitted.  Therefore, I believe that the missing testimony was not materially important to render the transcript nonverbatim.

Second, there was no evidence put forth by Appellant that the military judge's findings of fact were "clearly erroneous" nor is this addressed by the majority opinion.  The Government also notes that SGT MS's testimony was "not referenced by the trial counsel during argument on findings, and was also never referenced by either party during the sentencing proceedings."  Brief for Appellee at 16, United States Davenport, No. 13-0573 (C.A.A.F. Mar. 31, 2014).

Further, SGT MS did not testify in the parallel coconspirator cases, underscoring that his testimony was limited to the money laundering charges specific to Appellant.  Thus, while SGT MS's testimony was omitted from the trial transcript,

3

in my view this omission did not contain a "fact of substance or materiality to a legal or factual issue." United States v. Nelson, 3 C.M.A. 482, 487, 13 C.M.R. 38, 43 (1953).

This case is distinguished from Lashley where this Court found prejudice because the missing testimony related to specific elements of an offense for which the appellant was ultimately found guilty. But this is unlike the present case where the missing testimony "mostly" related to money laundering charges of which Appellant was acquitted. The majority attempts to draw a link between SGT MS's testimony and "the seven extortion specifications," effectively raising the specter that the missing testimony could be linked to charges of which Appellant was found guilty. Davenport, __ M.J. at __ (12). In doing so, it correctly states that the DuBay military judge asked SGT MS "whether he was aware of any threats made by the [A]ppellant and whether the [A]ppellant had ever taken money or property from 'local nationals.'" Id. at __ (7). But, as reflected in the colloquy below and acknowledged by the majority, SGT MS answered this question in the negative; he did not, in fact, have any information related to these questions. Id. at __ (7). As the record indicates:

> [TC]:  Now, did any of the questioning -- did any of it go into -- did any of your testimony go into Sergeant Davenport receiving bribes?

4

[MS]: No, they didn't get in depth as far as asking me anything of that nature, sir.

[TC]: Okay.  Or, how about anything to do with him making threats to local nationals?

[MS]: They did ask me that and I told them, "To my recollection, I never saw him make threats or anything.  I never even heard anything about him making threats."

To be sure, the DuBay military judge recognized that "[t]he full substance and extent of [SGT MS's] testimony is not altogether clear."  That being said, the military judge noted what could be ascertained regarding SGT MS's testimony, namely: (1) SGT MS testified pursuant to a grant of immunity and his testimony was "relatively short" as compared to other witnesses; (2) SGT MS's testimony "mostly related to the 'money laundering' charges . . . of which [A]ppellant was found not guilty"; (3) SGT MS was not aware of any threats made by Appellant or of any property or money taken from local nationals; (4) SGT MS denied that a meeting took place with an individual named Haider; and (5) that it was unclear whether SGT MS was asked about his reduction in rank or the underlying reason for it.  On that last point, the DuBay military judge further noted that "[t]here is no evidence to suggest that such questioning . . . could have affected the rights of the appellant at trial."  And that, "even if the defense counsel was unable to cross-exam [SGT MS] about

the reason for his reduction in rank, there could have been no prejudicial effect on the rights of the appellant at trial."

Based on these findings, the CCA determined not only that it was clear that "SGT MS's testimony was on the merits and only related to the two money laundering specifications of which [A]ppellant was acquitted," but also that SGT MS "had no information relevant to any offense of which [A]ppellant was convicted."  2013 CCA LEXIS 361, at *14, 2013 WL 1896277, at *4 (footnotes omitted).  Thus, the DuBay military judge's findings were not clearly erroneous and the CCA did not err in its characterization of the findings.  As a result, on the unusual facts of this case, I would conclude the omission was not qualitatively substantial and did not prejudice the Appellant.

B.  R.C.M. 1103(f)

As a distinct point, this case raises an anomaly with respect to the application of R.C.M. 1103(f).  The majority returns the case to the convening authority for the sentence limiting remedy under R.C.M. 1103(f) which comes into effect "[i]f, because of loss of recordings or notes, or other reasons, a verbatim transcript cannot be prepared."  R.C.M. 1103(f).  This rule proposes two remedies for nonverbatim transcripts.  R.C.M. 1103(f)(1) states the convening authority may "[a]pprove only so much of the sentence . . . except that a bad-conduct discharge, confinement for more than six months, or forfeiture

6

of two-thirds pay per month for more than six months, may not be approved." R.C.M. 1103(f)(2) states the convening authority may also "[d]irect a rehearing <u>as to any offense of which the accused was found guilty</u> if the finding is <u>supported by the summary of the evidence</u> contained in the record." R.C.M. 1103(f)(2) (emphasis added).

R.C.M. 1103(f)(2) authorizes a rehearing only for those offenses for which the accused was found guilty. But R.C.M. 1103(f)(1) -- which allows the accused to receive a sentence reduction -- does not. This creates an absurd result. Specifically, this allows a sentence reduction in a case where the summarized evidence goes only to an offense for which the accused was found not guilty, yet does not allow a rehearing in the same instance (obviously double jeopardy would not permit a rehearing on a matter for which the accused was acquitted). This makes no sense and surely was not the intent of the drafters. Logic and statutory construction principles -- namely, that one can derive the meaning of an ambiguous construction in the context of the words or phrases surrounding it -- would suggest that R.C.M. 1103(f)(1) is similarly qualified to any offense of which the accused was found guilty.[1] If that were the case, then the application of the sentence

---

[1] The statutory construction principle of <u>noscitur a sociis</u> essentially means "it is known by the company it keeps."

limiting provision of R.C.M. 1103(f)(1) would be invalid because in my view the summary of evidence from SGT MS's testimony did not relate to an offense of which Appellant was found guilty.

Therefore, I do not believe the missing testimony was sufficiently substantial to render the transcript nonverbatim nor do I believe that the sentence limiting provision of R.C.M. 1103(f)(1) applies towards offenses of which the accused was found not guilty. Accordingly, I respectfully dissent.